IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | |
|---|---|
| **STEPHANIE RECKER,**<br>    Plaintiff<br><br>vs.<br><br>**UNITED STATES OF**<br>**AMERICA**,<br>    Defendant | **NO. 4:26-CV-00021** |

## PLAINTIFF'S ORIGINAL COMPLAINT

On December 30, 2024, Ms. Stephanie Recker suffered serious injuries while visiting Big Bend National Park because of an improperly maintained roadway located inside the park. As a result of the Government's negligence, Ms. Recker fell over 12-feet into a dry ravine causing her to suffer multiple broken and fractured bones, lacerations, and internal injuries. Plaintiff Stephanie Recker brings this negligence, negligent undertaking, and premises liability complaint against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2674.

## PARTIES

1.1.    Plaintiff Stephanie Recker currently resides in Findlay, Ohio, which is in Hancock County, Ohio. Plaintiff had to move back to Ohio to live

with her family due to her injuries from the fall. At the time of her fall,

Plaintiff resided in Travis County, Texas.

1.2.     Plaintiff is a civilian.

1.3.     Plaintiff is 33 years of age.

1.4.     The Defendant is the United States of America, its officers,

agents, employees, and representatives.

## JURISDICTION, SERVICE, & VENUE

2.1.     This Federal District Court has jurisdiction because this action

is brought under 28 U.S.C. §§ 1346(b), 2671-80, commonly known as the

Federal Tort Claims Act, which vests exclusive subject-matter jurisdiction of

the Federal Tort Claims Act in Federal District Court.

2.2.     The United States of America may be served with process in

accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a

copy of the Summons and Complaint on the United States Attorney for the

Western District of Texas, Justin Simmons, by certified mail, return receipt

requested at this office:

> The United States Attorney's Office
> ATTN: Civil Process Clerk
> 601 NW Loop 410, Suite 600
> San Antonio, Texas 78216

2.3.    Service is also affected by serving a copy of the Summons and

Complaint on Pamela Bondi, Attorney General of the United States, by

certified mail, return receipt requested at:

> The Attorney General's Office
> ATTN: Civil Process Clerk
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

2.4.    Venue is proper in this district under 28 U.S.C. § 1402(b)

because the United States is a Defendant and a substantial part of the events

or omissions giving rise to the claims occurred in this judicial district.

2.5.    The substantive law of the state of Texas applies to this lawsuit

because the acts or omissions complained of in this Complaint occurred in

Texas. 28 U.S.C. § 1346(b)(1).

## AGENCY

3.1.    Plaintiff's personal injuries and resulting damages were

proximately caused by the tortious and wrongful acts or omissions of

employees or agents of the United States of America working for the National

Park Service at Big Bend National Park, while acting within the scope of

their office, employment, or agency under circumstances where the United

States of America, if a private person, would be liable to the Plaintiff in the same manner and to the same extent as a private individual.

3.2.     The National Park Service is an agency of the United States of America.

3.3.     The United States of America, through its agency, the National Park Service, at all times material to this lawsuit owned, operated, and controlled Big Bend National Park, and staffed its facilities with its agents, servants, and employees.

## JURISDICTIONAL PREREQUISITES

4.1.     Pursuant to 28 U.S.C. §§ 2672 and 2675(a), the claims were presented and delivered via certified mail to the proper federal agency, the National Park Service, on March 14, 2025.

4.2.     The National Park Service acknowledged receipt of the claims on April 29, 2025. The acknowledgment letter from the National Park Service stated that it would transfer the claims to the United States Department of the Interior for administrative handling.

4.3.     The claim of Stephanie Recker set forth a "sum certain" of $30,000,000.00.

4.4.    The notice of claims set forth a brief description of the facts giving rise to the lawsuit as well as a sum certain.

4.5.    Neither the Feres Doctrine nor any exception to the Federal Tort Claims Act, 28 U.S.C. § 2680, bars this lawsuit.

4.6.    More than six months has passed since the presentation of Plaintiff's administrative claim, and the United States has failed to resolve the claim. All claims are deemed denied.

4.7.    Accordingly, Plaintiff has complied with all jurisdictional prerequisites and conditions precedent to the commencement and prosecution of this suit.

## FACTS

5.1.    Ms. Recker was a healthy 32-year-old woman who was visiting Big Bend National Park in late December 2024.

5.2.    Big Bend National Park invites visitors, like Ms. Recker, to its park specifically for late-night stargazing. On its website, the National Park Service (NPS) advertises to potential visitors that Big Bend National Park is "one of the outstanding places in North America for stargazing. In fact, it has the least light pollution of any other national park unit in the lower 48 states." The NPS highlights Big Bend's seclusion as a selling point, stating

"one factor that makes this possible is simply the sparse human occupation of this region. The obvious impression one gets of wildness in the Big Bend is the lack of visible lights indicating a house or a town."

5.3.    In turn, the NPS knows that it is inviting the public onto its property for the specific purpose of stargazing late at night in darkness and in remote areas.

5.4.    Also, while on a daytime hike, a park ranger employed by NPS recommended that Ms. Recker return to the park during the darkest nighttime hours to stargaze.

5.5.    So, at around 12:30 a.m. on December 30, 2024, Ms. Recker stopped her vehicle at the Cottonwood Bridge on Maverick Road at Mile Marker 14.

5.6.    Ms. Recker legally parked her car on the side of Maverick Road just near Mile Marker 14, where Big Bend National Park created a dedicated space on the shoulder of the road for visitors to pull over:



5.7.    After she exited her car, and while Ms. Recker was walking, she

fell off an unmarked, unguarded, and unlit ledge over 12 feet down to the

rocks and hard ground below.



5.8.    The dramatic drop-off is difficult to see during the day, much

less at night. There are no reflective markers, signs, or other warnings or

barriers that would alert a visitor that a dangerous drop-off is right there.

Here is the 12-foot drop-off ledge from the bottom of the ravine perspective:


**[photo on following page]**



5.9.     Ms. Recker landed on her back on a dry creek bed. She laid alone on the ground for 2 hours in the pitch-black night before any help arrived.

5.10.     Once the NPS decided, as it did here, to invite the public to its parks for nighttime stargazing, it was responsible for acts negligently carried out relating to that decision.

5.11.     Operational decisions on safety must be made and implemented reasonably for the public and cannot be negligently made and/or implemented.

5.12.     The routine safety maintenance of the national park road where the 12-foot drop-off exists is a safety issue and not a policy decision related to the maintenance of wildlife, or natural beauty of the park. Instead, the NPS

failed to fix a basic hazard on a common type of well-traversed roadway for which any property owner would be held responsible under Texas law.

5.13.    The NPS management policies require the NPS to reduce or remove known hazards and apply other appropriate measures, including closures, guarding, signing, or other forms of education to protect visitors. It failed to do so here.

5.14.    Also, NPS Director's Orders, the NPS UniGuide Program, and federal law require the NPS to follow the Manual on Uniform Traffic Control Devices (MUTCD). And the manual instructs that several types of warning markers must be used where roadway drop-offs pose a danger to the public. In fact, the marker recommended by the MUTCD was and is currently used on the same road at Big Bend National Park where Plaintiff's fall occurred. Just not where it was needed most.

5.15.    In addition, because the NPS invites the public to visit its parks at night for the specific purpose of stargazing (and other activities), the Government owes its invitees a duty to keep their premises, roadways, and bridges free from unreasonable risks of harm. In this instance, the NPS knew or reasonably should have known of the danger a 12-foot drop-off onto rocks posed for its visitors. Especially where, as here, that roadway invites the

public to park and step out onto the unguarded, unmarked, and unprotected ledge.

5.16.     What's more, the NPS failed to make this dangerous and known hazard reasonably safe, and did nothing to warn the Plaintiff or any of its invitees about the unreasonable danger.

5.17.     The NPS failed to keep this location reasonably safe even though the NPS used various forms of warnings, safety signs, and other protective measures on the same road leading up to the dangerous unprotected drop-off.

5.18.     For example, at various points along the road (Maverick Road) leading up to Mile Marker 14, the NPS placed warning signs about park dangers posing less risk than the one Ms. Recker faced.

5.19.     Here, a temporary warning for visitors to slow down their speed:



5.20.    Next, a warning for visitors that there are dangerous curves

ahead on the road:



5.21.    And temporary cones and barriers on the road where there is a

potentially dangerous spot for visitors just off the roadway:



5.22.    Then, a bridge where reflective warning signs (the type the MUTCD requires for drop-off dangers on the roadway) are placed for visitors to see:



5.23.    Ms. Recker's injuries were a result of the NPS' failure to take simple, operational steps to protect invitees at the Big Bend National Park from a foreseeable, predictable, and easily preventable fall with appropriate safety barriers, safety and/or warning signs, and other protective measures.

5.24.    Once Ms. Recker was finally discovered, she was admitted to the ER at Big Bend Regional Medical Center via EMS. She reported 10/10 pain. She suffered a severe fracture to her left forearm, rib fractures, a right sacral fracture (bone at the base of the spine), a right superior pubic ramus fracture (the right side of the pelvis), a left superior pubic ramus fracture (the left side

of the pelvis), and left acetabular fracture with internal bleeding (hip socket).
Ms. Recker had pulmonary contusions bilaterally.

5.25.    Ms. Recker was transferred by Emergent Air at 10:20 am on
December 31, 2024, to St. David's South Austin Medical Center in Austin,
Texas where she underwent several surgeries to fix her numerous injuries. In
short, Ms. Recker suffered broken bones all over her body along with internal
bleeding and bruising. Ms. Recker's injuries cause daily pain and suffering,
require ongoing treatment and therapy, and will likely require future
treatment and therapy throughout her life.

5.26.    Ms. Recker's injuries were a result of negligence on the part of
employees of the United States National Park Service (NPS). The NPS
operates and maintains the Big Bend National Park and is responsible for
ensuring a reasonably safe environment for its invited guests, in accordance
with applicable Texas state law.

5.27.    In Ms. Recker's case, the federal government employees acting
within the course and scope of their federal employment committed
operational acts of negligence that were the proximate cause of Ms. Recker's
fall and resulting injuries. The NPS failed to warn of known hazards at the
location where Ms. Recker fell; negligently maintained the roadway,
shoulder, and bridge area in question; negligently inspected and/or repaired

the dangerous condition of the area where Ms. Recker fell; negligently failed to place railings, lighting, and other infrastructure at the bridge where Ms. Recker fell; and failed to follow its own safety, maintenance and other applicable polices, protocols, and procedures. All these failures were operational in nature and created a foreseeable danger to the park invitees that directly led to Ms. Recker's severe and permanent injuries.

5.28.    Because the Government's negligence was in performing an operational safety function, the Government did not have the discretion to do so negligently.

5.29.    Here, the hazard from which the Government failed to protect its invitee guests, like Ms. Recker, was not located in the wild, and had no connection to the general environment of Big Bend National Park. It was a paved road, on a bridge that was constructed to invite park visitors to pull over and park vehicles. In short, the Government's negligence involves its failure to fix a basic hazard on a common type of well-traversed terrain for which any property owner would be held responsible under Texas law.

5.30.    Further, once the government undertook to supply this location for its visitors, it was required to do so reasonably and act with reasonable care as to the safety and well-being of its guest visitors to the park.

5.31.    In addition, the failure to warn its guest visitors about the danger of such a perilous fall from a location it invites guests to stop and visit, including encouraging and advertising to do so at night, was an operational decision to risk the safety of its visitors, and therefore, negligent.

## PREMISES LIABILITY

6.1.    Stephanie Recker was an invitee of the United States of America on December 30, 2024.

6.2.    At all times material to this lawsuit, including December 30, 2024, the United States had a duty to exercise reasonable care under all the circumstances in the maintenance and operation of their property. The United States had a duty to exercise ordinary care to keep its premises in a reasonably safe condition and to ensure that the condition of the property did not pose an unreasonable risk of harm.

6.3.    The premises was owned, managed, maintained, and controlled by the United States in a manner that allowed and created an unreasonably dangerous condition that the United States knew or reasonably should have known about.

6.4.    At all times material to this lawsuit, the United States, by and through its employees, agents, or representatives, had actual and/or constructive knowledge of the unreasonably dangerous condition.

6.5.    The United States failed its duty to keep its premises reasonably safe for invitees. Specifically, the United States failed to exercise reasonable or ordinary care in one or more of the ways described in this Complaint, including:

> (a) Failing to exercise reasonable care to ensure that invitees at Big Bend National Park had a reasonably safe place to enjoy the activities within the scope of the invitation, including but not limited to, having a reasonably safe roadway and shoulder that was placed over a 12-foot drop-off ledge;
>
> (b) Failing to provide operational safety signs, warnings, markings, or protective barriers to ensure safe access and use on the roadway and shoulder that was located on a steep 12-foot drop-off ledge;
>
> (c) Failing to safely secure the premises for invitees such as Ms. Recker;

(d) Failing to conduct reasonable inspections of the roadway and shoulder area to discover the hazardous condition that was located on a 12-foot drop-off ledge where the fall occurred;

(e) Failing to fix a basic hazard on a common type of well-traversed terrain for which any property owner would be held responsible under Texas law;

(f) Failure to warn of known hazards at the location where Ms. Recker fell, and failing to warn invitees not to approach the ledge with the dangerous and unguarded drop-off;

(g) Negligently maintaining the roadway, shoulder, and drop-off area in question;

(h) Negligently inspecting and/or repairing the dangerous condition of the area where Ms. Recker fell, including but not limited to, negligently failing to place railings, lighting, warning signs, or other infrastructure at the ledge where Ms. Recker fell;

(i) Negligently failing to follow its own safety, maintenance and other applicable polices, protocols, and procedures as mandated by various National Park Services policies and manuals, including but not limited to, the National Park

System Management Policy, NPS UniGuide Standards, and
various United States Department of the Interior Director's
Orders applicable to the safety of visitors at National Parks;
and,

(j) Failing to install barriers of any kind to prevent invitees like
Plaintiff from approaching the ledge and drop-off.

6.6.    The United States is liable for its failure to carry out its
activities and operations with reasonable care; for creating a dangerous
condition that posed an unreasonable risk of harm to its invitees like
Plaintiff; for its failures make a known and dangerous condition on its
properly reasonably safe for invitees; for its failures to warn invitees such as
the Plaintiff of the dangerous condition of which the Government knew or in
the exercise of reasonable care should have known.

6.7.    All these failures were operational in nature and created a
foreseeable danger to the park invitees that directly led to Ms. Recker's
severe and permanent injuries.

6.8.    At all material times, the employees, agents, or representatives
of the United States Government were negligent and caused the injuries
sustained by Plaintiff. The injuries to Stephanie Recker were foreseeable and
preventable. Had the NPS acted with reasonable care, Plaintiff would not
have been seriously and permanently injured.

## NEGLIGENT UNDERTAKING

7.1.    The United States voluntarily undertook to perform services that it knew or should have known were necessary for the protection of others.

7.2.    The United States failed to exercise reasonable care in performing those services in one or more of the following ways:

> (a) Failing to exercise reasonable care to ensure that invitees at Big Bend National Park had a reasonably safe place to enjoy the activities within the scope of the invitation, including but not limited to, having a reasonably safe roadway and shoulder that was placed over a 12-foot drop-off ledge;

> (b) Failing to provide operational safety signs, markings, or protective barriers to ensure safe access and use on the roadway and shoulder that was located on a steep 12-foot drop-off ledge;

> (c) Failing to safely secure the premises for invitees such as Ms. Recker;

> (d) Failing to conduct reasonable inspections of the roadway and shoulder area to discover the hazardous condition that was located on a 12-foot drop-off ledge where the fall occurred;

(e) Failing to fix a basic hazard on a common type of well-traversed terrain for which any property owner would be held responsible under Texas law;

(f) Failure to warn of known hazards at the location where Ms. Recker fell, and failing to warn invitees not to approach the ledge with the dangerous and unguarded drop-off;

(g) Negligently maintaining the roadway, shoulder, and drop-off area in question;

(h) Negligently inspecting and/or repairing the dangerous condition of the area where Ms. Recker fell, including but not limited to, negligently failing to place railings, lighting, warning signs, or other infrastructure at the ledge where Ms. Recker fell;

(i) Negligently failing to follow its own safety, maintenance and other applicable polices, protocols, and procedures as mandated by various National Park Services policies and manuals, including but not limited to, the National Park System Management Policy, NPS UniGuide Standards, and various United States Department of the Interior Director's Orders applicable to the safety of visitors at National Parks;

(j)  Failing to use reasonable care when undertaking to provide services at night to invitees through the voluntary creation of the roadway and shoulder that encouraged visitors to pull over and traverse on an unprotected and dangerous ledge with a 12-foot drop-off onto rocks, which increased the risk of harm to Plaintiff of the very type of harm she suffered; and,

(k) Failing to install barriers of any kind to prevent invitees like Plaintiff from approaching the ledge and drop-off.

7.3.    All these failures were operational in nature and created a foreseeable danger to the park invitees that directly led to Ms. Recker's severe and permanent injuries.

7.4.    The United States' negligent performance of the duties it voluntarily undertook to perform increased Plaintiff's risk of harm, including the very harm Plaintiff suffered.

7.5.    At all material times, the employees, agents, or representatives of the United States Government were negligent and caused the injuries sustained by Plaintiff.

7.6.     One or more of the above negligent acts of the NPS directly and proximately caused injury to the Plaintiff. The injuries to Stephanie Recker

were foreseeable and preventable. Had the NPS acted with reasonable care, Plaintiff would not have been seriously and permanently injured.

## NEGLIGENCE

8.1.    Plaintiff complains that the United States was negligent in one or more of the following ways:

(a) Failing to exercise reasonable care to ensure that invitees at Big Bend National Park had a reasonably safe place to enjoy the activities within the scope of the invitation, including but not limited to, having a reasonably safe roadway and shoulder that was placed over a 12-foot drop-off ledge;

(b) Failing to provide operational safety signs, markings, or protective barriers to ensure safe access and use on the roadway and shoulder that was located on a steep 12-foot drop-off ledge;

(c) Failing to safely secure the premises for invitees such as Ms. Recker;

(d) Failing to conduct reasonable inspections of the roadway and shoulder area to discover the hazardous condition that was located on a 12-foot drop-off ledge where the fall occurred;

(e) Failing to fix a basic hazard on a common type of well-traversed terrain for which any property owner would be held responsible under Texas law;

(f) Failure to warn of known hazards at the location where Ms. Recker fell, and failing to warn invitees not to approach the ledge with the dangerous and unguarded drop-off;

(g) Negligently maintaining the roadway, shoulder, and drop-off area in question;

(h) Negligently inspecting and/or repairing the dangerous condition of the area where Ms. Recker fell, including but not limited to, negligently failing to place railings, lighting, warning signs, or other infrastructure at the ledge where Ms. Recker fell;

(i) Negligently failing to follow its own safety, maintenance and other applicable polices, protocols, and procedures as mandated by various National Park Services policies and manuals, including but not limited to, the National Park System Management Policy, NPS UniGuide Standards, and various United States Department of the Interior Director's Orders applicable to the safety of visitors at National Parks;

(j) Failing to use reasonable care when undertaking to provide services at night to invitees through the voluntary creation of the roadway and shoulder that encouraged visitors to pull over and traverse on an unprotected and dangerous ledge with a 12-foot drop-off onto rocks, which increased the risk of harm to Plaintiff of the very type of harm she suffered; and,

(k) Failing to install barriers of any kind to prevent invitees like Plaintiff from approaching the ledge and drop-off.

8.2.    All these failures were operational in nature and created a foreseeable danger to the park invitees that directly led to Ms. Recker's severe and permanent injuries.

8.3.    At all material times, the employees, agents, or representatives of the United States Government were negligent and caused the injuries sustained by Plaintiff.

8.4.     One or more of the above negligent acts of the NPS directly and proximately caused injury to the Plaintiff. The injuries to Stephanie Recker were foreseeable and preventable. Had the NPS acted with reasonable care, Plaintiff would not have been seriously and permanently injured.

# DAMAGES

9.1.    Due to the Government's negligence described in this Complaint, Plaintiff suffered injury. As a proximate result of the Defendant's negligent acts or omissions, Plaintiff suffered injuries, which would not have otherwise occurred.

9.2.    Plaintiff Stephanie Recker requests all damages available under Texas state law, federal law, and equity including, but not limited to:

(a) Past and future physical pain & suffering

(b) Past and future mental anguish

(c) Past and future loss of earning capacity

(d) Past and future physical disfigurement

(e) Past and future physical impairment

(f) Past and future reasonable and necessary medical expenses, hospital services, rehabilitation services, physical therapy services, medical equipment, medications, custodial care, nursing and attendant care, and other healthcare treatment and expenses

(g) Out-of-pocket expenses

9.3.    Further, Plaintiff seeks post-judgment interest and the costs of prosecuting this claim. But Plaintiff does not seek punitive damages or pre-judgment interest.

## CONCLUSION

Plaintiff requests that Defendant be cited to appear and answer herein: that upon final bench trial, Plaintiff have a judgment against the Defendant for the amount of actual damages; and for such other and different amounts as they shall show by proper amendment before trial; for post-judgment interest at the applicable legal rate; for all Court costs incurred in this litigation; and for such other and further relief, at law and in equity, both general and special, to which the Plaintiff may show herself entitled to and to which the Court believes her deserving.

Respectfully Submitted,

/s/  Jamal K. Alsaffar
**Jamal K. Alsaffar**
   jamal@trial.law
   Texas State Bar #24027193
**Steven Haspel**
   steven@trial.law
   Texas State Bar #24109981
**NATIONAL TRIAL LAW, P.L.L.C.**
1114 Lost Creek Blvd, Ste. 410
Austin, TX 78746

(512) 476-4346 (o)
(512) 467-4400 (f)

Attorneys for the Plaintiff